## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Action No. 3:11CR149–HEH |
| | ) | |
| KIM JENKINS BRANDVEEN, | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION
### (Defendant's Motion to Withdraw Guilty Plea)

Approximately seven weeks after executing a detailed Plea Agreement with an accompanying Statement of Facts, and entering a plea of guilty to the charge of tax evasion, the defendant seeks to withdraw her plea as improvidently entered. The defendant contends that her will was overborne by the coercive persuasion of her attorneys. She also maintains that her attorneys failed to fully comprehend the elements of the charge against her, and provided both inadequate assistance and flawed legal advice. Central to her motion is her after-discovered belief that she may have had a viable theory of defense, which she now contends was neither adequately considered nor fully appreciated by counsel prior to her plea of guilty.

Both the government and defendant have filed detailed memoranda in support of their respective positions. The Court heard oral argument and received evidence on October 24, 2011. The Court afforded both sides an opportunity to file supplemental memoranda. For the reasons more particularly stated below, Defendant's Motion to Withdraw Guilty Plea will be denied.

## I.

On June 7, 2011, the defendant, Kim Jenkins Brandveen, was indicted by a federal grand jury for tax evasion and obstruction of an official proceeding, in violation of 26 U.S.C. § 7201 and 18 U.S.C. § 1512(c)(2), respectively. The Indictment was the culmination of an investigation by the Criminal Investigation Division of the Internal Revenue Service which began in early 2005. The evidence introduced on October 24, 2011, revealed multiple contacts between representatives of the IRS and the defendant from 2005 up to the date of the Indictment. These meetings included communication with the defendant's then tax counsel, Cynthia Blanche, to discuss an expedited disposition of the defendant's case. When this proved unavailing, a conference was arranged in March 2010 between the Assistant United States Attorney, the assigned special agent of the IRS, the defendant, and her criminal counsel, Todd Stone. This meeting was intended to provide the defendant and her attorney with an overview of the government's evidence. Defendant failed to appear without explanation.

Immediately following the defendant's arraignment on June 20, 2011, another conference was held between the Assistant United States Attorney, the defendant, and her attorneys. At this point, the defendant was represented by Assistant Federal Public Defenders Carolyn V. Grady and Paul G. Gill. At this meeting the government unveiled its evidence and agreed to make the special agent's report available for review by the Federal Public Defender's investigator.

In the weeks that followed, Carolyn Grady ("Grady"), the principal assistant public defender assigned to the case, held several tense meetings with the defendant.

2

According to Grady, she and her investigator reviewed the government's evidence with the defendant in detail. Grady acknowledged in her testimony on October 24, 2011, that the defendant questioned aspects of the government's case, particularly the prosecution's calculation of the alleged tax loss. During her testimony, Grady specifically described an emotional meeting on July 27, 2011, during which Grady admitted pressing her client to make a decision as to whether she wished to plead or go to trial. Grady was accompanied by her colleague Paul Gill ("Gill"), a former trial attorney with the U.S. Department of Justice Tax Division. The tenor of the meeting was driven in part by a deadline imposed by the U.S. Attorney's Office, after which they would not ask the Court to reduce the defendant's base offense level under U.S. Sentencing Guideline §3E1.1(b) by one additional point for acceptance of responsibility.

At one point in the meeting, Grady testified that she told the defendant that she needed to get her head out of the sand—in other words, make a realistic assessment of her situation. Gill characterized Grady's demeanor during the meeting as forceful and at times loud, but not yelling. At the close of the July 27 meeting, although the defendant exhibited some reluctance, she expressed a desire to enter a plea of guilty. In elaborating on the defendant's reluctance, Grady testified that while the defendant expressed concerns about the calculation of loss and other technical defenses, she never denied her guilt.

The following day, according to Grady, she called the defendant to confirm her desire to plead guilty. Defendant expressed no change in her position.

In the week leading up to the defendant's entry of her guilty plea, Grady and Gill

3

met again with the defendant to go over the proposed Plea Agreement and accompanying Statement of Facts. Grady testified that the defendant expressed no objection to the Statement of Facts aside from contesting the amount of tax loss.

Several times in early August, Grady met with the defendant's tax attorney, Mr. Richard Davis ("Davis"). Davis testified at the October 24 hearing that although he was not a criminal lawyer, he had some concerns about the defendant's guilt on the tax evasion count. In Davis' opinion, the money which the defendant allegedly failed to pay to the IRS—which forms the core claim of a tax evasion count—was technically a penalty and not a tax. Davis also testified that, in his expert opinion, all or portions of the government's case on the evasion count may have been barred by the statute of limitations. Davis conceded that he had no expertise to evaluate the strength of the government's case as to Count 2, alleging obstruction of an official proceeding. Despite Davis' concerns, he testified that he never counseled the defendant not to accept the plea agreement offered by the government.[1]

Grady further testified at the October 24 hearing that she and Gill concluded that the technical defense suggested by Davis had minimal merit and was too high a risk given the strength of the government's case. Grady pointed out that under the Plea Agreement, the defendant received the substantial benefit of capping her liability at five years—the statutory maximum on Count 1—and avoiding the possibility of an additional twenty years of confinement if convicted on Count 2.

---

[1] The defendant also engaged Earl Blanche, a Certified Public Account and former IRS employee, to review her case. Blanche testified that in his opinion, the defendant had been incorrectly charged in Count 1. The government disagrees.

4

On August 9, 2011, the morning the defendant entered her plea, Grady described her client as somewhat reluctant, but nonetheless determined to proceed with a plea of guilty. Her client again reviewed the Statement of Facts and Plea Agreement and requested several changes, to which the government agreed. At no time did the defendant profess her innocence or request additional time to reflect on her decision.

Several weeks after her plea of guilty, the defendant, accompanied by Grady, met with the U.S. probation officer in connection with the preparation of the presentence report. According to Grady, the defendant acknowledged the accuracy of the government's Statement of Facts and advised the probation officer that she pled guilty to tax evasion because she was in fact guilty.

In his testimony, Gill described receiving materials from the defendant's tax attorney Davis explaining Davis' theory that the money at issue in this case was in fact a trust fund penalty and not a tax. Gill testified that he disagreed with Davis' characterization of the evaded payment as being simply a penalty. In Gill's view, the payments were more closely akin to self-assessed taxes. Gill testified that he explained his disagreement with Davis' position to the defendant.

During their earlier meetings, Gill described the defendant as initially reluctant to plead guilty. After lengthy discussions—at times tense—the defendant elected to change her course.

Gill met with the defendant on the morning she entered her plea of guilty. She appeared somber and occasionally cried, but evinced no indication that she had changed her mind.

5

Gill first learned of the defendant's desire to withdraw her guilty plea during the week of September 9, 2011. On September 28, 2011, the defendant sent a letter to the Supervisory Assistant Federal Public Defender, Robert Wagner, complaining about the representation she received from Grady and Gill. Both assigned Assistant Federal Public Defenders sought and received leave of court to withdraw as counsel in the case. New counsel was appointed and, at the defendant's request, filed the immediate motion to withdraw her guilty plea.

As more particularly set forth in the attached transcript, the Court thoroughly canvassed the defendant on the voluntariness of her plea at the August 9 hearing. The defendant, who acknowledged that she was under oath and subject to perjury prosecution for false statements, stated unequivocally that she had independently decided that it was in her best interests to enter a plea of guilty. She further revealed that she entered her plea of guilty because she was in fact guilty. She denied that anyone had threatened or forced her in any way. She stated that the Statement of Facts, which she had personally reviewed and signed, accurately captured the events underlying her case and declined the Court's invitation to add any additional facts or circumstances to make it more accurate.

Lastly, the defendant advised the Court that every answer provided in response to the Rule 11 questions were her own and that no one had advised or directed her to answer in any specific way. Although the defendant was highly emotional during the plea colloquy, at no time did she evidence any reluctance or suggest that she was not guilty of tax evasion. In fact, when the Court inquired during the colloquy if she had any questions concerning her plea of guilty, she responded negatively.

## II.

The law governing the withdrawal of guilty pleas is well settled in the Fourth Circuit. As the Court of Appeals noted in *United States v. Bowman*, 348 F.3d 408 (4th Cir. 2003), "[a] defendant has no 'absolute right' to withdraw a guilty plea and the district court has discretion to decide whether a 'fair and just reason' exists upon which to grant a withdrawal." *Id.* at 413 (quoting *United States v. Ubakanma*, 215 F.3d 421, 424 (4th Cir. 2000)). *See* Fed. R. Crim. P. 11(d)(2)(B). Motions to withdraw a guilty plea typically turn on the thoroughness of the Rule 11 colloquy conducted by the trial court prior to the acceptance of the guilty plea. *See United States v. Wilson*, 81 F.3d 1300, 1307 (4th Cir. 1996). Although the Fourth Circuit has identified a number of factors the trial court should consider when evaluating a motion to withdraw guilty plea, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *Bowman*, 348 F.3d at 414 (quoting *United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993) (internal quotations omitted)). The Fourth Circuit emphasized the extraordinary weight to be accorded a properly conducted Rule 11 guilty plea colloquy in *United States v. Lambey*, 974 F.2d 1389 (4th Cir. 1992) (en banc). "If an appropriately conducted Rule 11 proceeding is to serve a meaningful function, on which the criminal justice system can rely, it must be recognized to raise a strong presumption that the plea is final and binding." *Id.* at 1394.

Both the United States and the defendant concede that the Fourth Circuit established the appropriate analytical framework for evaluating the defendant's motion in *United States v. Moore*, 931 F.2d 245 (4th Cir.), *cert. denied*, 502 U.S. 857 (1991). In

7

*Moore*, the Fourth Circuit counseled trial courts to employ the following evaluative

criteria:

> (1) whether the defendant has offered credible evidence that his plea was not knowing or not voluntary, (2) whether the defendant has credibly asserted his legal innocence, (3) whether there has been a delay between the entering of the plea and the filing of the motion, (4) whether defendant has had close assistance of competent counsel, (5) whether withdrawal will cause prejudice to the government, and (6) whether it will inconvenience the court and waste judicial resources.

*Id.* at 248.

While the Court should consider each factor, all are not weighted equally. *United States v. Sparks*, 67 F.3d 1145, 1154 (4th Cir. 1995). Paramount is a determination as to whether the defendant has advanced plausible evidence that her plea was not knowing or voluntary and whether the defendant has credibly asserted her legal innocence. *Id.* Also of primary significance is whether the defendant had the effective assistance of competent counsel. *Id.* The remaining three factors are accorded secondary significance in the Court's analysis. *Id.*

After carefully reviewing the evidence and argument of counsel, this Court is not convinced that the defendant has satisfied her heavy burden of demonstrating a fair and just reason for withdrawing her guilty plea. Even assuming the existence of an arguable defense to the tax evasion count, this Court is not convinced that her plea was borne of coercion and ignorance. The defendant's sworn representations to the Court during the Rule 11 colloquy were clearly to the contrary. The defendant unequivocally stated that she had thoroughly discussed the charge with her attorneys, including any possible defenses, and that she believed that she was in fact guilty of tax evasion. Moreover, prior

8

to the plea hearing, the defendant was aware that Davis questioned the viability of the charge, but never counseled her against entering a plea of guilty.

Conspicuously absent from the defendant's argument in support of her motion to withdraw her guilty plea is any consideration of the benefit she received from the dismissal of the obstruction charge in Count 2. If convicted of obstruction, the defendant faced an additional twenty years of potential confinement. Davis admitted in his testimony that he did not factor the effect of a conviction on Count 2 into his analysis of the case. Obviously in determining whether to enter a plea of guilty, a defendant typically conducts a holistic assessment of the benefits and detriments of the government's offer.

Turning to the specific factors enunciated in *United States v. Moore*, neither side contends that the Court did not conduct a thorough and comprehensive Rule 11 hearing prior to accepting the defendant's guilty plea. With respect to the defendant's post-plea assertion of legal innocence, her evidence, at best, demonstrates a debatable, technical defense. Although the defendant offers a number of cases and IRS rulings characterizing the payment allegedly evaded as a penalty rather than tax, none squarely address the issue in the context of a violation of 28 U.S.C. § 7202. While the defendant's position may have some arguable support in a civil context, its viability as a defense in a criminal case is less clear. Both the government and the defendant's former counsel, Paul Gill, who previously served as a tax litigator with the Department of Justice, reject the defense as a misconstruction of the law.

Furthermore, the defendant was fully aware of the investigation that had been

9

conducted by the IRS for several years prior to her indictment. She consulted with lawyers and tax advisors prior to being charged. She was fully aware of the nature of the charges, the potential evidence against her, and Davis' assessment of the case. She had ample time to develop and investigate this defense prior to the entry of her plea of guilty.

It is also important to note that the defendant waited approximately seven weeks after her plea of guilty to notify the Court of her desire to withdraw her plea. In the intervening period, the defendant met with the United States probation officer, acknowledged her guilt, and agreed that the supporting Statement of Facts was correct. Her meeting with the probation officer occurred during the same time period as defendant's continued consultations with her tax attorney, Davis, and her tax consultant, Earl Blanche, CPA.

This Court also finds no fault in the representation provided by the Federal Public Defender's Office. Both Grady and Gill have consistently provided exceptional representation to clients before this Court. In this case, their assessment of the evidence, interpretation of the law, and explanation of the risks of trial were carefully conceived and thoroughly articulated. Although Grady may have chosen forceful language to convey her message, a lesser degree of candor may have been a disservice to her client in this case.

After a careful review of the record and all attendant circumstances, the Court is not persuaded that the defendant has demonstrated a fair and just reason to withdraw her guilty plea. Buyer's remorse is simply an insufficient basis to overturn a presumptively final, counseled, and voluntary guilty plea.

The Defendant's Motion to Withdraw Guilty Plea is therefore denied. An appropriate order will accompany this Memorandum Opinion.

<u>   /s/            </u>
Henry E. Hudson
United States District Judge

Date: <u>Nov. 17, 2011</u>
Richmond, VA

1

```
 1                 UNITED STATES DISTRICT COURT
                   EASTERN DISTRICT OF VIRGINIA
 2                      Richmond Division

 3

 4
    UNITED STATES OF AMERICA      )
 5                                )
    v.                            )   Criminal Case No.:
 6                                )   3:11 CR 149
    KIM JENKINS BRANDVEEN         )
 7
                                      August 9, 2012011
 8

 9            COMPLETE TRANSCRIPT OF PLEA
           BEFORE THE HONORABLE HENRY E. HUDSON
10            UNITED STATES DISTRICT COURT JUDGE

11

12 APPEARANCES:

13 Michael C. Moore, Esquire
   OFFICE OF THE UNITED STATES ATTORNEY
14 600 East Main Street
   Suite 1800
15 Richmond, Virginia  23219

16      Counsel on behalf of the United States

17
   Carolyn V. Grady, Esquire
18 Paul G. Gill, Esquire
   OFFICE OF THE FEDERAL PUBLIC DEFENDER
19 701 East Broad Street
   Suite 3600
20 Richmond, Virginia  23219

21      Counsel on behalf of the Defendant

22

23

24            KRISTA M. LISCIO, RMR
              OFFICIAL COURT REPORTER
25          UNITED STATES DISTRICT COURT
```

1    THE COURT:  Good morning.

2    MR. MOORE:  Good morning.

3    THE COURT:  All right, call the next case, please.

4    THE CLERK:  Case Number 11 CR 149.  *United States*

5 *of America v. Kim Jenkins Brandveen.*

6    Mr. Michael C. Moore represents the United States.

7    Ms. Carolyn V. Grady and Mr. Paul G. Gill

8 represent the defendant.

9    Are counsel ready to proceed?

10    MR. MOORE:  The United States is ready.

11    MS. GRADY:  The defense is ready, Your Honor.

12    THE COURT:  The matter is before the Court this

13 morning for entry of a plea of guilty to Count 1 of

14 this two count indictment.

15    Ms. Grady, earlier this week, or maybe it was last

16 week, we received a motion for substitution of counsel

17 in this case.  I assume that is being withdrawn?

18    MS. GRADY:  I believe it was withdrawn.

19    THE COURT:  I assume Mr. Gill is not substituting

20 for you?

21    MS. GRADY:  No.  I would be, you know, a better

22 person for it.  It was -- I believe the motion was

23 withdrawn at the end of the day yesterday, Your Honor.

24    THE COURT:  I don't know that it was formally

25 filed or not.

3

1      MR. MOORE:  There was a motion to withdraw that I

2 got a NEF on late in the day yesterday.

3      THE COURT:  Fine.  So that's been resolved, is

4 that correct?

5      MR. MOORE:  That's correct, Your Honor.

6      MS. GRADY:  Correct, Your Honor.

7      THE COURT:  All right.  Very well then.

8      Ms. Grady, if you and Mr. Gill and your client

9 will come forward, please.

10     Ms. Brandveen, if you would raise your right hand,

11 ma'am, place your left hand on the Bible, and face the

12 Clerk of the Court.

13     THE CLERK:  You do solemnly swear that the answers

14 to the questions which you are about to be asked shall

15 be the truth, the whole truth, and nothing but the

16 truth, so help you God?

17     MS. BRANDVEEN:  Yes.

18     THE COURT:  Ms. Brandveen, if you would once again

19 give me your full name, and your date of birth.

20     MS. BRANDVEEN:  Kim Jenkins Brandveen.  July 15,

21 1961.

22     THE COURT:  And Ms. Brandveen, you are a citizen

23 of the United States?

24     MS. BRANDVEEN:  Yes.

25     THE COURT:  And you do read, write, and understand

4

1  the English language?

2      MS. BRANDVEEN:  Yes.

3      THE COURT:  Ms. Brandveen, you're currently under

4  oath, and any false statements you make could result in

5  a perjury prosecution, do you understand that?

6      MS. BRANDVEEN:  Yes, sir.

7      THE COURT:  And any information you provide in

8  connection with this hearing could be used for or

9  against you in a subsequent criminal or civil

10  proceeding, are you aware of that?

11      MS. BRANDVEEN:  Yes.

12      THE COURT:  Ms. Brandveen, during the last year,

13  have you been treated for any problems involving

14  alcohol or substance abuse?

15      MS. BRANDVEEN:  No.

16      THE COURT:  During that period of time, have you

17  received any treatment for any psychological,

18  psychiatric, or mental-related disorders?

19      MS. BRANDVEEN:  No.

20      THE COURT:  Are you under the influence of any

21  drugs, alcohol, or medication today?

22      MS. BRANDVEEN:  No.

23      THE COURT:  Prior to coming to court today, have

24  you had ample opportunity to go over this case with

25  your attorneys, Ms. Grady and Mr. Gill?

1          MS. BRANDVEEN:  Yes.

2          THE COURT:  Are you entirely satisfied with their

3    services?

4          MS. BRANDVEEN:  Yes.

5          THE COURT:  Have they done everything reasonable

6    you have asked them to do in connection with this case?

7          MS. BRANDVEEN:  Yes.

8          THE COURT:  Have your attorneys explained to you

9    in detail what the United States must prove to convict

10   you of this charge of federal income tax evasion?

11         MS. BRANDVEEN:  Yes.

12         THE COURT:  And have they explained to you that in

13   order to convict you, the government must prove all the

14   parts and legal allegations here beyond a reasonable

15   doubt?

16         MS. BRANDVEEN:  Yes.

17         THE COURT:  Do you understand what the word

18   reasonable doubt means?

19         MS. BRANDVEEN:  Yes.

20         THE COURT:  Have your attorneys also gone over

21   with you what the government's evidence against you

22   would have been had you decided to take this case to

23   trial?

24         MS. BRANDVEEN:  Yes.

25         THE COURT:  Have you also explained to them

1  everything that you recall about the events that

2  occurred between January 31, 2000, and July 12, 2006,

3  that led to you being indicted on this tax evasion

4  charge?

5       MS. BRANDVEEN:  Yes.

6       THE COURT:  You've withheld no information, and

7  they know everything about this case that you do, is

8  that correct?

9       MS. BRANDVEEN:  Yes.

10      THE COURT:  Have you and your attorneys also

11 discussed whether or not based upon what you know about

12 the government's case, and what you have disclosed to

13 them, that you are in fact guilty of this charge; have

14 you had that discussion with them?

15      MS. BRANDVEEN:  Yes.

16      THE COURT:  Have you discussed whether you have

17 any legal defenses or any legitimate way you can void

18 conviction; have you had that candid discussion with

19 your attorneys?

20      MS. BRANDVEEN:  Yes.

21      THE COURT:  I'm sure that Mr. Gill and Ms. Grady

22 have given you their advice - both of them are very

23 experienced trial lawyers - as to what they think you

24 ought to do in this case.  But what's important, Ms.

25 Brandveen, is whether you have made up your mind on

1  your own whether it's in your best interest to enter a

2  plea of guilty or to go to trial; have you made that

3  decision?

4       MS. BRANDVEEN:  Yes.

5       THE COURT:  What have you decided to do?

6       MS. BRANDVEEN:  To plead guilty.

7       THE COURT:  Are you pleading guilty because you're

8  in fact guilty of income tax evasion?

9       MS. BRANDVEEN:  Yes.

10      THE COURT:  And you're the same Kim Jenkins

11 Brandveen whose name appears in Count 1 of the

12 indictment, that refers to you, is that correct?

13      MS. BRANDVEEN:  Yes.

14      THE COURT:  Now, Ms. Brandveen, you have entered

15 your plea of guilty today -- or you are entering your

16 plea of guilty today in connection with a plea

17 agreement you have entered into with the United States.

18 That agreement is in writing, it has been filed with

19 the Court, and on Page Number 88 there appears to be a

20 signature line which bears your signature.  Did you

21 sign that, Ms. Brandveen?

22      MS. BRANDVEEN:  Yes.

23      THE COURT:  Did you read this document over?

24      MS. BRANDVEEN:  Yes.

25      THE COURT:  Did you understand it?

1    MS. BRANDVEEN:  Yes.

2    THE COURT:  Did you have ample opportunity to

3 discuss this document with your attorneys?

4    MS. BRANDVEEN:  Yes.

5    THE COURT:  Is there anything about this document

6 that you don't understand, or do you have any questions

7 concerning this document or its contents?

8    MS. BRANDVEEN:  No.

9    THE COURT:  Does this document contain the

10 complete agreement between you and the United States?

11    MS. BRANDVEEN:  Yes.

12    THE COURT:  Is there anything anybody has promised

13 you, or do you expect to receive anything from anybody,

14 in exchange for your plea that's not contained in this

15 written document?

16    MS. BRANDVEEN:  No.

17    THE COURT:  And, Ms. Brandveen, under the terms

18 and conditions of this plea agreement, you're entering

19 and pleading guilty to Count 1 of this two-count

20 indictment, and the government is going to dismiss at

21 sentencing Count 2, you understand that?

22    MS. BRANDVEEN:  Yes.

23    THE COURT:  And you will not be prosecuted for any

24 other related offenses, correct?

25    MS. BRANDVEEN:  Yes.

1     THE COURT:  Aside from those two provisions, is

2  there anything else anybody has promised you, or do you

3  expect anything in exchange for your plea?

4     MS. BRANDVEEN:  No.

5     THE COURT:  And there's no agreement as to

6  sentencing here, you understand that?  There's no plea

7  agreement here as to what sentence you're going to

8  receive.  You understand you're pleading guilty and

9  taking your chances here?

10    MS. BRANDVEEN:  Yes.

11    THE COURT:  Okay.  Has anybody threatened you or

12 forced you in any way to enter into this plea today?

13    MS. BRANDVEEN:  No, sir.

14    THE COURT:  You've given it a lot of thought, and

15 you think it's in your best interest?

16    MS. BRANDVEEN:  Yes.

17    THE COURT:  Okay.  Now, Ms. Brandveen, when you

18 enter a plea of guilty, you give up a number of your

19 constitutional rights, and I'm going to go through

20 those with you.  And if there's anything that I discuss

21 that you don't understand, let me know and we'll

22 explain it to you in more detail.

23    As you're well aware, this is a felony charge, and

24 you have a constitution right to have this charge tried

25 by a jury.  If you opted for a jury trial, 12 randomly

1  selected people from the Richmond area would be brought

2  into court to hear and decide your case.

3      In order to convict you, all 12 of those jurors

4  would have to unanimously agree, in other words each of

5  them would have to agree, that the government has

6  proven all the allegations against you beyond a

7  reasonable doubt.  If just one juror had a reasonable

8  doubt as to your guilt, you couldn't be convicted of

9  this charge by that jury panel, do you understand that?

10     MS. BRANDVEEN:  Yes.

11     THE COURT:  Do you understand if you went to trial

12  you would be presumed to be innocent throughout that

13  entire trial unless and until the government proved

14  your guilt beyond a reasonable doubt?

15     MS. BRANDVEEN:  Yes.

16     THE COURT:  You would have no obligation to

17  testify or to introduce any evidence.  And if you chose

18  not to do so, neither the Court nor the jury could

19  consider that.  In that event, your guilt or innocence

20  would be determined strictly on the strength of the

21  government's case without any consideration to the fact

22  that you exercised your constitutional right not to

23  testify.

24     If you wished, you could enter a plea of not

25  guilty, require the government to prove each and every

11

1  allegation against you beyond a reasonable doubt.  You

2  would have no obligation to produce any evidence at

3  all.  The government has brought the charges, they have

4  the obligation to prove your guilt.  And you would be

5  represented by counsel throughout that entire trial.

6      You can also use subpoenas to compel witnesses to

7  appear and testify on your behalf.  And if there's any

8  evidence, any documents, any exhibits, any items that

9  would be of value to you in defending yourself, you can

10 get a court order and require that it be brought into

11 court for use by you and your attorneys in defending

12 yourself.

13     When you enter a plea of guilty, you also give up

14 your right to remain silent, and the government could

15 call you as a witness and ask you questions about this

16 case either in court or before a grand jury.  You would

17 be required to answer those questions truthfully and

18 fully provided that your answers did not increase the

19 punishment you could receive.  Do you understand that?

20     MS. BRANDVEEN:  Yes.

21     THE COURT:  When you enter a plea of guilty, you

22 also give up your right to cross-examine the

23 government's witnesses, to confront your accusers, and

24 to test the strength of the government's case.  Because

25 when you enter a plea of guilty, you are legally

12

1  agreeing that the government can prove these charges

2  against you beyond a reasonable doubt.

3       Once I accept your plea of guilty today, there

4  will be no trial in this case.  That plea of guilty is

5  final and can't be appealed.  You understand you can't

6  appeal a guilty plea, you understand that, do you not?

7       MS. BRANDVEEN:  Yes, sir.

8       THE COURT:  Additionally, Ms. Brandveen, when I

9  accept your plea of guilty today, you will be a

10  convicted felon.  As a convicted felon, you forfeit a

11  number of your constitutional rights.  And those

12  include the right to serve on a jury, the right to

13  vote, right to hold public office, right to possess a

14  firearm, among rights and privileges other folks have,

15  you have given those up, do you understand that?

16       MS. BRANDVEEN:  Yes.

17       THE COURT:  And, Ms. Brandveen, are you currently

18  on bond, probation, parole, or suspended sentence

19  anywhere else on any other unrelated charges?

20       MS. BRANDVEEN:  No.

21       THE COURT:  Is that your understanding, Ms. Grady?

22       MS. GRADY:  This is her only arrest, Judge.

23       THE COURT:  All right.

24       Any information to the contrary, Mr. Moore?

25       MR. MOORE:  No, Your Honor.  My understanding is

1  she has no prior criminal record.

2       THE COURT:  Thank you very much.

3       Ms. Brandveen, what is the maximum sentence you

4  face upon conviction on this charge?

5       MS. BRANDVEEN:  Five years.

6       THE COURT:  It carries of maximum of five years, a

7  fine of up to $100,000, up to three years of supervised

8  release, which is kind of like being on parole, and a

9  special assessment of $100.

10      I'm sure that you and your attorneys have gone

11 over this in detail where your case comes out on the

12 federal criminal sentencing guidelines, have you not?

13      MS. BRANDVEEN:  Yes.

14      THE COURT:  Okay.  Well, the Guidelines are

15 advisory only.  This Court begins the sentencing

16 process by computing your guidelines, and then I have

17 to weigh those guidelines against all the factors set

18 forth in 18, United States Code, Section 3553(a).

19 Let's talk for a minute about those factors so that you

20 will understand them.

21      Number one, I look at the nature and circumstances

22 of the offense.  What it was all about.

23      I look at any criminal history you may have.

24 Apparently you have none.

25      I then try to determine what type of sentence

14

1 would be adequate, but not longer than necessary, to

2 promote respect for the law, provide for deterrence,

3 protect the community, allow for restitution, allow for

4 your rehabilitation.

5      I then consider what types of sentences other

6 people with similar backgrounds and similar charges

7 have received.  And then lastly I factor in any

8 personal, medical, or educational needs that you and

9 your family may have, and I come up with a sentence

10 that is adequate, but not longer than necessary, to

11 achieve those goals.

12     Now, importantly, the advice that your attorneys

13 have given you on the Guidelines is an educated

14 estimate.  It is based upon the information they have

15 about you right now.  At the close of this hearing, I

16 will refer this case to a U.S. probation officer who

17 will do a presentence report.  As they begin to gather

18 information about your background, it is possible that

19 they can come up with something that could affect your

20 guidelines that neither Mr. Gill nor Ms. Grady was

21 aware of.  I don't know that that's going to happen.

22 It could.

23     And therefore, it is possible that the good faith

24 estimate your attorneys have made of the Guidelines may

25 not be correct because it is an educated estimate.  Do

1 you understand that?

2      MS. BRANDVEEN:  Yes.

3      THE COURT:  If their estimate of the Guidelines

4 proves to be wrong, you cannot withdraw your guilty

5 plea, do you understand that?

6      MS. BRANDVEEN:  Yes.

7      THE COURT:  And also, Ms. Brandveen, I doubt there

8 are any such circumstances in this case, but if there

9 is anything about your case that makes it different or

10 unusual from the average case, such that in reviewing

11 those 3553(a) factors I find the need to adjust your

12 sentencing guidelines to accommodate those, I have the

13 authority to deviate from the Guidelines upward or

14 downward to accommodate those aggravating or mitigating

15 factors.  So you understand that?

16      MS. BRANDVEEN:  Yes.

17      THE COURT:  Parole has been abolished in the

18 federal system, Ms. Brandveen, and most federal

19 detainees are required to serve 85% of the sentence

20 they receive.

21      In Paragraph Number 5 of your plea agreement,

22 you've waved your right of appeal on sentencing issues.

23 Let's talk about that for a minute because it's real

24 important.  I told you a minute ago that the U.S.

25 probation officer in preparing the presentence report

1  will compute your guidelines.  If you feel that the

2  probation officer has made an error in computing your

3  guidelines and you or your attorneys file an objection,

4  I'll hear your objection at your sentencing hearing.

5  However, if I disagree with you and I rule against you

6  on guideline issues, you cannot appeal.  You've waved

7  that.  Do you understand that?

8          MS. BRANDVEEN:  Yes.

9          THE COURT:  Now, on the other hand if the United

10 States feels that I have made an error in sentencing

11 you, that I misinterpreted the Guidelines, they have

12 reserved their right of appeal, but you have waved

13 yours.  You fully understand that?

14         MS. BRANDVEEN:  Yes.

15         THE COURT:  Any questions about that?

16         MS. BRANDVEEN:  No.

17         THE COURT:  Okay.  Ms. Brandveen, you have

18 indicated to me that you're aware, and your attorneys

19 have gone over with you, what the United States must

20 prove to convict you of federal income tax evasion,

21 correct?

22         MS. BRANDVEEN:  Yes.

23         THE COURT:  Do you have any questions about what

24 must be proven in order to convict you of the charge?

25         MS. BRANDVEEN:  No.

1      THE COURT:  Okay.  With that in mind, have you

2  reviewed the statement of facts filed by the United

3  States in this case?

4      MS. BRANDVEEN:  Yes.

5      THE COURT:  On Page 7, once again there's a

6  signature line that bears your name, and again there

7  appears to be your signature.  Did you sign this,

8  Ms. Brandveen?

9      MS. BRANDVEEN:  Yes.

10     THE COURT:  You have read the statement of facts

11  over?

12     MS. BRANDVEEN:  Yes.

13     THE COURT:  Understood it?

14     MS. BRANDVEEN:  Yes, sir.

15     THE COURT:  Discussed it with your lawyers?

16     MS. BRANDVEEN:  Yes.

17     THE COURT:  Is what the United States said

18  happened what in fact happened?

19     MS. BRANDVEEN:  Yes.

20     THE COURT:  Are there any additional facts and

21  circumstances that you feel must be added to this

22  statement of facts to make it more accurate in your

23  mind?

24     MS. BRANDVEEN:  No.

25     THE COURT:  Okay.  Ms. Brandveen, we have gone

1  over a number of things this morning.  Is there

2  anything whatsoever we have gone over this morning that

3  you did not understand?

4       MS. BRANDVEEN:  No.

5       THE COURT:  Do you have any questions you would

6  like to ask me about your plea of guilty or your plea

7  agreement?

8       MS. BRANDVEEN:  No.

9       THE COURT:  Do you need anymore time to confer

10 with your attorneys before you enter your plea of

11 guilty?

12      MS. BRANDVEEN:  No.

13      THE COURT:  Ms. Brandveen, I'm sure that you and

14 your attorneys have gone over basically the questions

15 that I'm going to ask you today.  Every good attorney

16 sits down with their client and goes over the basic

17 questions and talks about the answers.  That's just

18 good lawyering.  But has anybody advised you or

19 directed you to answer my questions in any specific way

20 today?

21      MS. BRANDVEEN:  No.

22      THE COURT:  Every answer you've given is your own

23 personal answer, is that correct?

24      MS. BRANDVEEN:  Yes.

25      THE COURT:  All right.  Ms. Brandveen, to the

1  charge of income tax evasion as contained in Count 1 of

2  this indictment, what is your plea, guilty or not

3  guilty?

4      MS. BRANDVEEN:  Guilty.

5      THE COURT:  Based upon your plea of guilty, and

6  the responses to my questions and the government's

7  statements of facts, the Court finds your plea of

8  guilty is voluntarily, knowingly, and intelligently

9  entered with the understanding of the nature of the

10  charge, the consequences of the plea, and the penalty

11  provisions that you face.

12      I further find that you have entered your plea of

13  guilty today after thoroughly consulting with your

14  attorneys.  I find there's an independent factual basis

15  for your plea.  I'm talking about the statement of

16  facts which you tell me is correct.

17      And I also think that you're competent and capable

18  of entering a plea of guilty today.  I will therefore

19  accept your plea of guilty, and find you guilty of

20  income tax evasion as charged in Count 1 of this

21  indictment.

22      And, Ms. Brandveen, you will not be sentenced

23  today.  Your case will be referred to a U.S. probation

24  officer who will do a presentence report in your case.

25      What day will this case be continued to,

1  Ms. Pizzini?

2      THE CLERK:  November 18th, Your Honor, at 10:00.

3      THE COURT:  Ms. Grady, are you and Mr. Gill

4  available at that time?

5      MS. GRADY:  We are, Your Honor.

6      THE COURT:  Mr. Moore, are you available, sir?

7      MR. MOORE:  I am, Your Honor.

8      THE COURT:  Okay.

9      Ms. Brandveen, I'm referring your case to a U.S.

10  probation officer to do a presentence report.  The

11  probation officer will call you in for an interview,

12  and the report they prepare will pretty much discuss

13  your entire life, your upbringing, your education, your

14  employment history, any other criminal activities

15  you've had.  You say you've had none, and I'm sure

16  that's probably correct.  Any issues involving drugs,

17  alcohol, or health.  And that gives me a pretty

18  complete picture of your background.  That's what I use

19  to sentence you with.  Be completely cooperative with

20  the probation officer.  But remember, whatever they

21  tell you to do to assist in preparation of that

22  presentence report is a direct order from this Court.

23  I expect you to follow their instructions.  Can you do

24  that?

25      MS. BRANDVEEN:  Yes.

1     THE COURT:  All right.

2     Mr. Moore, I see no reason why Ms. Brandveen

3 should not remain on bond.  Do you have any?

4     MR. MOORE:  No, Your Honor, I have no objection to

5 her remaining released on the same conditions.  As a

6 matter of fact, she is prohibited from contact with

7 some family members, and I don't know that now that

8 she's entered a plea of guilty, I don't know that

9 that's necessary if the Court and defense counsel are

10 inclined to some sort of modification.

11     THE COURT:  Any thoughts on that, Ms. Grady?

12     MS. GRADY:  I don't -- I think that's a good

13 suggestion by the government.  There was -- she was

14 only kept separate because they were potential

15 witnesses against her.

16     THE COURT:  Very well.

17     Ms. Brandveen, I'm going to allow you to remain on

18 release on pretrial supervision under all the terms and

19 conditions previously set by the magistrate judge with

20 the exception of the condition that you may not have

21 contact with your family.  You may do that at this

22 point.  Otherwise, all conditions remain in place.  No

23 violations of the law, maintain contact with pretrial

24 services, close contact with your attorneys.  Follow

25 the probations officers instructions.  Be present in

22

1   this court on November 18th at 10:00.  Can you do that?

2        MS. BRANDVEEN:  Yes.

3        THE COURT:  Okay, ma'am.  Then you're excused and

4   free to go.

5        I thank counsel.

6        MS. GRADY:  Thank you, Judge.

7        THE COURT:  Court will stand in recess.

8                   REPORTER'S CERTIFICATE

9             I, Krista M. Liscio, OCR, RMR, Notary

10  Public in and for the Commonwealth of Virginia at

11  large, and whose commission expires March 31, 2012,

12  Notary Registration Number 149462, do hereby certify

13  that the pages contained herein accurately reflect

14  the notes taken by me, to the best of my ability, in

15  the above-styled action.

16        Given under my hand this 18th day of October,

17  2011.

18

19        _____

                 Krista M. Liscio, RMR
20               Official Court Reporter

21

22

23

24

25